[No. F045191. Fifth Dist. Apr. 28, 2005.]

In re MICHAEL H., a Person Coming Under the Juvenile Court Law.

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL H., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

COUNSEL

Alan Siraco, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Carlos A. Martinez and Jamie A. Scheidegger, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CORNELL, J.**—Michael H. has a long history of involvement in the juvenile justice system. While several of the incidents involved sexual overtones, only the last adjudication involved a felony (Pen. Code, § 288). As a result of this adjudication, Michael was committed to the California Youth Authority (CYA).

The People filed a petition pursuant to Welfare and Institutions Code section 1800 et seq.[1] shortly before Michael's commitment was scheduled to expire on his 21st birthday. The juvenile court ordered Michael's commitment extended for two years after a contested court trial.[2]

Michael argues the proceedings in the juvenile court violated his rights to due process and to equal protection of the laws. He also argues there was not substantial evidence to support the necessary findings to continue his commitment.

The Supreme Court recently upheld section 1800 et seq. in the face of a due process challenge by construing the statutory scheme to require a finding

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] Michael waived his right to a jury trial.

that the person's mental deficiency, disorder, or abnormality causes serious difficulty in controlling his or her dangerous behavior. (*In re Howard N.* (2005) 35 Cal.4th 117 [24 Cal.Rptr.3d 866, 106 P.3d 305].)

Taking our cue from the Supreme Court, we will uphold the constitutionality of section 1800 et seq. by construing the statutory scheme to require that the person's mental deficiency, disorder, or abnormality causes serious difficulty in controlling his or her behavior, resulting in a serious and well-founded risk of reoffense. We also hold that this requirement must be alleged in the petition seeking extended commitment and demonstrated at the probable cause hearing and trial. Because the petition seeking to extend Michael's commitment did not contain the necessary allegations, we will reverse the order of commitment and remand to the juvenile court.

We reject Michael's equal protection arguments because *Howard N.* and our due process analysis render them moot. We do not address, and express no opinion on, other potential due process arguments that were not asserted in this court.

## FACTUAL AND PROCEDURAL SUMMARY

Michael's first contact with the juvenile justice system occurred in 1996 when he was arrested after he entered a neighbor's house late at night. Michael removed his clothes after entering the house and proceeded to the bedroom where his neighbor was sleeping. Michael fled when she awoke. The neighbor chased and caught Michael hiding outside.

Michael admitted two misdemeanor violations—Penal Code sections 602, subdivision (k)(1) (trespass) and 314 (indecent exposure). Michael was placed on probation and required to perform 20 hours of community service.

In April 1998 Michael admitted he violated his probation by failing to report to probation as ordered, stealing funds ($30) from school, disobeying his parents, and taking ammunition to school. He remained on probation and was committed to juvenile hall for three weekends.

In November 1998 Michael admitted violating his probation by violating Penal Code section 647.6, subdivision (a) (annoying a child under the age of 18). The conduct resulting in this violation occurred when Michael and a developmentally disabled youth engaged in mutual masturbation at school during breaks and before lunch. Michael was continued on probation and placed in a group home.

In March 2000 Michael admitted he violated his probation by being terminated from the group home because of a lack of progress. Michael was continued on probation on "house arrest" under the strict supervision of his mother and stepfather. He also was ordered to undergo a psychological evaluation.

In May 2000 Michael admitted he violated Penal Code section 314 (indecent exposure). This incident occurred when Michael was riding the bus to school. Michael exposed himself and fondled the breasts of a 12-year-old girl while she masturbated him. According to the record, this behavior occurred on several occasions on the ride to school.

The parties apparently agreed that Michael needed intense therapy in a highly structured setting. A satisfactory disposition could not be reached because of the misdemeanor offenses, so the People filed a new petition alleging the same incidents constituted a violation of Penal Code section 288, subdivision (a). Michael remained in the custody of his parents under house arrest pending the adjudication hearing.

Three weeks later, before the adjudication of the last petition, a new petition was filed alleging that Michael violated his probation by refusing to obey his parents, shoplifting from a store, and being verbally abusive to his family. Michael was detained in juvenile hall until the adjudication hearing.

Michael raised the double jeopardy bar to the Penal Code section 288 petition, arguing the incident arose out of the same acts as the indecent exposure petition. The People argued the indecent exposure incident related to a specific incident, and the new petition related to several incidents that occurred before the indecent exposure.

Michael eventually withdrew his motion to dismiss and admitted he violated Penal Code section 288, subdivision (a). The juvenile court ordered Michael to undergo a 90-day CYA evaluation. The juvenile court followed the subsequent recommendation and committed Michael to CYA.

Michael was committed to CYA when he was two months shy of his 18th birthday. The People filed a petition to extend Michael's commitment pursuant to section 1800 et seq. a little more than three months before Michael's 21st birthday.

After receiving evidence, the juvenile court issued its ruling.

"The Court finds the evidence proves beyond a reasonable doubt that Michael has a mental or physical deficiency[,] disorder[,] or abnormality. He has, but not limited to, been diagnosed with paraphilia, if not pedophilia, that has not been alleviated, particularly by his own failure to take part in his treatment, and as a result of that he is physically dangerous to the public. [¶] . . . [¶]

"It is clear Michael has failed to reach a status of not being a physical danger to the public.

"Further, as a result of his mental or physical deficiency[,] disorder[,] or abnormality[,] Michael has serious difficulty in controlling his behavior. [¶] . . . [¶]

"Finally, as a result of such loss of control there is a serious and well-founded risk of re-offense. [¶] . . . [¶]

"The petition is therefore sustained. The minor is ordered recommitted for a period of two years."

Michael appeals from the order extending his commitment.

## DISCUSSION

I. *Due Process*

 A. *California civil commitment statutes*

Our discussion of Michael's right to due process is guided by the Supreme Court's recent decision in *Howard N.* We begin, however, with the various civil commitment schemes that exist in California.

 In 1995 the Legislature enacted the Sexually Violent Predators Act (SVP Act), which is codified in section 6600 et seq. (Stats. 1995, ch. 763, § 3, p. 5922.) The SVP Act provides for the involuntary civil commitment of certain offenders. An offender is eligible for commitment as a sexually violent predator (SVP) if he or she has been convicted of sexually violent offenses (as defined in section 6600, subd. (a)(2)) against two or more victims, and he or she has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent behavior. (*Id.,* subd. (a)(1).) A diagnosed mental disorder is defined as a "congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal

sexual acts in a degree constituting the person a menace to the health and safety of others." (*Id.*, subd. (c).)

■ The Mentally Disordered Offender Act (MDO Act) (Pen. Code, § 2960 et seq.) applies to certain offenders about to be released on parole. An offender is eligible for commitment under the MDO Act if all of the following are met: (1) He or she has a severe mental disorder that is not in remission or cannot be kept in remission without treatment (Pen. Code, § 2962, subd. (a)); (2) the disorder must have been "one of the causes of or was an aggravating factor in the commission of a crime for which [he or she] was sentenced to prison" (*id.*, subd. (b)); (3) he or she has been in treatment for the severe mental disorder for 90 days or more within the year prior to the release date (*id.*, subd. (c)); (4) before his or her parole or release, the treating physician and other specified medical authorities certify that each of the noted conditions exist and, because of the disorder, the offender "represents a substantial danger of physical harm to others" (*id.*, subd. (d)(1)); and (5) the crime for which the prisoner was sentenced to prison was punished by a determinate sentence under Penal Code section 1170 (Pen. Code, § 2962, subd. (e)(1)) and is specifically listed in the MDO Act (*id.*, subd. (e)(2)(A)–(Q)).

■ The Lanterman-Petris-Short Act (LPS Act) (§ 5000 et seq.) "is a comprehensive scheme designed to address a variety of circumstances in which a member of the general population may need to be evaluated or treated for different lengths of time. [Citations.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654].) A person who, "as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled," may be taken into custody and placed in a designated facility for varying periods, depending on the circumstances. (§ 5150.)

■ Section 1800 et seq. provides for the civil commitment of individuals under the control of CYA. The scheme provides that if the Youthful Offender Parole Board (YOPB) determines that discharge of a person from CYA "would be physically dangerous to the public because of the person's mental or physical deficiency, disorder, or abnormality," the YOPB may request that a petition be filed seeking continued commitment of the person. (§ 1800.)

Sections 1800, 1801 and 1802 were added by statute in 1963. (Stats. 1963, ch. 1693, § 4, pp. 3323–3324.) Section 1801.5 was added by statute in 1971. (Stats. 1971, ch. 1337, § 1, p. 2641.) These statutes have been amended

infrequently.[3] Some, if not most, of the amendments were in response to constitutional challenges to other civil commitment statutes.[4]

B. *The current state of the law*

Legislation similar to California's SVP Act has appeared throughout the country. Constitutional challenges to the SVP Act have reached both the California Supreme Court and the United States Supreme Court. These decisions have established constitutional limitations on civil commitment statutes.

Kansas's sexually violent predator act (the Kansas Act), similar to the SVP Act (*People v. Williams* (2003) 31 Cal.4th 757, 764 [3 Cal.Rptr.3d 684, 74 P.3d 779] (*Williams*)), was challenged on substantive due process grounds in *Kansas v. Hendricks* (1997) 521 U.S. 346 [138 L.Ed.2d 501, 117 S.Ct. 2072] (*Hendricks*). Hendricks was a pedophile who admittedly had trouble controlling his urge to molest children when he became "stressed out." (*Id.* at p. 355.) The Kansas Act defined a sexually violent predator as " 'any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in the predatory acts of sexual violence.' [Citation.] [¶] A 'mental abnormality' was defined, in turn, as a 'congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others.' [Citation.]" (*Id.* at p. 352.)

The Kansas Supreme Court invalidated the Kansas Act, concluding it violated Hendricks's right to due process because the statute's definition of "mental abnormality" did not satisfy the constitutional requirement that civil commitment statutes be limited to those individuals who have a "mental illness." (*Hendricks, supra,* 521 U.S. at p. 356.)

The United States Supreme Court acknowledged that "States have in certain narrow circumstances provided for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety. [Citations.] We have consistently upheld such involuntary commitment statutes[,] provided the confinement

---

[3] Section 1800 was last amended in 2003 (Stats. 2003, ch. 4, § 45), section 1801 in 1999 (Stats. 1999, ch. 83, § 199), section 1801.5 in 1998 (Stats. 1998, ch. 267, § 2), and section 1802 in 2003 (Stats. 2003, ch. 4, § 47).

[4] For example, the right to a jury trial was added after the Supreme Court held in *In re Gary W.* (1971) 5 Cal.3d 296, 307–308 [96 Cal.Rptr. 1, 486 P.2d 1201], that a defendant's right to due process and equal protection was violated by failing to require a jury trial.

takes place pursuant to proper procedures and evidentiary standards. [Citations.] [¶] . . . [¶] A finding of dangerousness, standing alone, is ordinarily not a sufficient ground upon which to justify indefinite involuntary commitment. We have sustained civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality.' [Citations.] These added statutory requirements serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control." (*Hendricks, supra,* 521 U.S. at pp. 357–358.) The Supreme Court concluded the Kansas Act satisfied the above requirements and did not violate Hendricks's right to equal protection. (*Id.* at p. 359.) The Supreme Court also held the Kansas Act was a civil commitment statute that did not implicate either ex post facto or double jeopardy principles. (*Id.* at pp. 369–371.)

The Supreme Court revisited the Kansas Act in *Kansas v. Crane* (2002) 534 U.S. 407 [151 L.Ed.2d 856, 122 S.Ct. 867] (*Crane*). The Kansas Supreme Court vacated Crane's commitment as a sexually violent predator, concluding that *Hendricks* required the state to prove that Crane could not control his dangerous behavior and the state had failed to meet this burden. The United States Supreme Court held that *Hendricks* did not impose such a requirement. (*Crane,* at p. 411.)

"We do not agree with the State, however, insofar as it seeks to claim that the Constitution permits commitment of the type of dangerous sexual offender considered in *Hendricks* without *any* lack-of-control determination. [Citation.] *Hendricks* underscored the constitutional importance of distinguishing a dangerous sexual offender subject to civil commitment 'from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings.' [Citation.] That distinction is necessary lest 'civil commitment' become a 'mechanism for retribution or general deterrence'—functions properly those of criminal law, not civil commitment. [Citation.] The presence of what the 'psychiatric profession itself classifie[d] . . . as a serious mental disorder' helped to make that distinction in *Hendricks*. And a critical distinguishing feature of that 'serious . . . disorder' there consisted of a special and serious lack of ability to control behavior. [¶] In recognizing that fact, we did not give to the phrase 'lack of control' a particularly narrow or technical meaning. And we recognize that in cases where lack of control is at issue, 'inability to control behavior' will not be demonstrable with mathematical precision. *It is enough to say that there must be proof of serious difficulty in controlling behavior.* And this, when viewed

in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case. [Citations.]" (*Crane, supra,* 534 U.S. at pp. 412–413, second italics added.)

■ The California Supreme Court has addressed the SVP Act on several occasions. In *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138 [81 Cal.Rptr.2d 492, 969 P.2d 584], the Supreme Court cited *Hendricks* extensively in rejecting due process, equal protection and ex post facto challenges to the SVP Act. In rejecting the defendant's claim that the SVP Act deprived him of due process because it did not incorporate a "mental illness" requirement, the Supreme Court stated, "Much like the Kansas law at issue in *Hendricks,* our statute defines [a sexually violent predator] as a person who has committed sexually violent crimes and who currently suffers from 'a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.' (§ 6600, subd. (a).) Through this language, the [SVP Act] plainly requires a finding of dangerousness. The statute then 'links that finding' to a currently diagnosed mental disorder characterized by the inability to control dangerous sexual behavior. [Citation.] This formula permissibly circumscribes the class of persons eligible for commitment under the [SVP Act]." (*Hubbart,* at p. 1158, fn. omitted.) In rejecting another argument, the Supreme Court reaffirmed that "due process *requires* an inability to control dangerous conduct . . . . [Citation.]" (*Ibid.*)

The Supreme Court revisited the SVP Act in *People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888 [119 Cal.Rptr.2d 1, 44 P.3d 949] (*Ghilotti*). The defendant was confined under the SVP Act when the Director of the State Department of Mental Health (the Director) designated two psychologists to examine him formally. Both psychologists concluded the defendant no longer met the statutory conditions for confinement. The Director disagreed and a petition was filed to continue the commitment under the SVP Act.

The Supreme Court rejected the Attorney General's suggestion that the SVP Act permitted the filing of a petition, even in the absence of the recommendation of two psychologists. (*Ghilotti, supra,* 27 Cal.4th at p. 894.) The Supreme Court, however, held that the Director retained the ability to challenge the formal evaluations if he or she concluded that the evaluations did not comply with the statutory framework. (*Id.* at pp. 912–913.)

■ To provide guidance in performing these evaluations, the Supreme Court discussed the statutory standard for determining whether a person diagnosed with a mental disorder is *likely* to engage in future acts of violence. (*Ghilotti, supra,* 27 Cal.4th at p. 915.) The Supreme Court concluded that the phrase "*likely* to engage in acts of sexual violence" (§ 6601, subd. (d), italics added) "requires a determination that, as the result of a current mental disorder which predisposes the person to commit violent sex offenses, he or she presents a *substantial danger*—that is, a *serious and well-founded risk*—of reoffending in this way if free." (*Ghilotti,* at p. 916.) "The [SVP Act] thus consistently emphasizes the themes common to valid civil commitment statutes, i.e., a current *mental condition or disorder* that makes it difficult or impossible to control volitional behavior and *predisposes* the person to inflict harm on himself or others, thus producing *dangerousness* measured by a high risk or threat of further injurious acts if the person is not confined. [Citations.]" (*Id.* at p. 920.)

■ The Supreme Court's summary reemphasized this conclusion: "We therefore conclude that the phrase '*likely* to engage in acts of sexual violence' (italics added), as used in section 6601, subdivision (d), connotes much more than the mere *possibility* that the person will reoffend as a result of a predisposing mental disorder that seriously impairs volitional control. On the other hand, the statute does not require a precise determination that the chance of reoffense is *better than even.* Instead, an evaluator applying this standard must conclude that the person is 'likely' to reoffend if, because of a current mental disorder which makes it difficult or impossible to restrain violent sexual behavior, the person presents a *substantial danger,* that is, a *serious and well-founded risk,* that he or she will commit such crimes if free in the community." (*Ghilotti, supra,* 27 Cal.4th at p. 922.)

■ Finally, as relevant here, in rejecting the defendant's claim that the Constitution required a higher level of certainty before it could proceed under the SVP Act, the Supreme Court stated, "In our view, the state has a compelling protective interest in the confinement and treatment of persons who have already been convicted of violent sex offenses, and who, as the result of current mental disorders that make it difficult or impossible to control their violent sexual impulses, represent a *substantial danger* of committing similar new crimes [citations]." (*Ghilotti, supra,* 27 Cal.4th at p. 924.) Subsequent decisions have imposed this standard both at the preliminary hearing (*Cooley v. Superior Court, supra,* 29 Cal.4th at p. 255) and at trial (*People v. Roberge* (2003) 29 Cal.4th 979, 988 [129 Cal.Rptr.2d 861, 62 P.3d 97]).

The Supreme Court again addressed the SVP Act in *Williams, supra,* 31 Cal.4th 757, which was decided after *Crane.* The issue presented was whether the SVP Act adequately encompassed the constitutional requirement that before a person could be committed civilly there must be proof that the person subject to potential commitment has "serious difficulty in controlling [his or her] behavior." (*Crane, supra,* 534 U.S. at p. 413.) The Supreme Court concluded the statute "inherently encompasses and conveys to a fact finder the requirement of a mental disorder that causes serious difficulty in controlling one's criminal sexual behavior. The [SVP Act's] plain words thus suffice 'to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.' [Citation.]" (*Williams,* at pp. 759–760.)

"Thus, in essence, *Kansas v. Crane, supra,* 534 U.S. 407, (1) confirmed the principle of *Hendricks, supra,* 521 U.S. 346, that a constitutional civil commitment scheme must link future dangerousness to a mental abnormality that impairs behavioral control, while (2) making clear that the impairment need only be serious, not absolute. . . . [¶] . . . Though the high court rejected the State of Kansas's argument that *no* impairment-of-control 'determination' was required [citation], this language, read in context, appears intended only to verify that a constitutional civil confinement scheme cannot *dispense* with impaired behavioral control as a basis for commitment. [¶] As we made clear in *Hubbart, supra,* 19 Cal.4th 1138, California's [SVP Act], like the Kansas statute at issue in *Hendricks, supra,* 521 U.S. 346, and *Kansas v. Crane, supra,* 534 U.S. 407, does *not* dispense with that requirement. On the contrary, California's statute inherently *embraces and conveys* the need for a dangerous mental condition characterized by impairment of behavioral control. As we have seen, the [SVP Act] accomplishes this purpose by defining a sexually violent predator to include the requirement of a diagnosed mental disorder (§ 6600, subd. (a)(1)) affecting the emotional or volitional capacity (*id.,* subd. (c)), which predisposes one to commit criminal sexual acts so as to render the person a menace to the health and safety of others (*ibid.*), such that the person is 'likely [to] engage in sexually violent criminal behavior' (*id.,* subd. (a)(1)). [Citation.]" (*Williams, supra,* 31 Cal.4th at pp. 773–774.)

██ The Supreme Court concluded, "For all the reasons indicated, we conclude that a commitment rendered under the plain language of the [SVP Act] necessarily encompasses a determination of serious difficulty in controlling one's criminal sexual violence, as required by *Kansas v. Crane, supra,* 534 U.S. 407. Accordingly, separate instructions or findings on that issue are

not constitutionally required, and no error arose from the court's failure to give such instructions in defendant's trial." (*Williams, supra,* 31 Cal.4th at p. 777, fns. omitted.)

 Although these decisions specifically address either the SVP Act or the Kansas Act, it is clear that these constitutional principles apply equally to all civil commitment schemes, including section 1800 et seq. (*In re Howard N., supra,* 35 Cal.4th at p. 130.) These principles establish that the Constitution permits civil commitment only if *all* of the following requirements are met: (1) The person subject to potential commitment has a mental illness or abnormality; (2) the mental illness or abnormality causes the person to have serious difficulty controlling his or her behavior; and (3) the inability to control his or her behavior results in a serious and well-founded risk that the person will reoffend.

### C. *Howard N.*

*Howard N.* is the only recent Supreme Court decision involving section 1800 et seq. The precise issue addressed in *Howard N.* was whether section 1800 et seq. "violates due process because it does not expressly require a finding that the person's mental deficiency, disorder, or abnormality causes serious difficulty in controlling behavior." (*In re Howard N., supra,* 35 Cal.4th at p. 122, fn. omitted.) Specifically omitted from consideration was "whether section 1800 et seq. should require a finding that 'the person's deficiency, disorder, or abnormality causes serious difficulty controlling behavior, *resulting in a well-founded risk of reoffense.*' " (*Id.* at p. 122, fn. 2.) Also not considered in *Howard N.* was whether section 1800 et seq. violates a person's right to equal protection of the laws. (*Howard N.,* at p. 138, fn. 8.)

 The Supreme Court concluded that section 1800 et seq. "should be interpreted to contain" a requirement that detention is permitted only if the person's mental deficiency, disorder, or abnormality causes serious difficulty in controlling behavior "in order to preserve [the statute's] constitutionality." (*In re Howard N., supra,* 35 Cal.4th at p. 122.)

 Relying on the above cited cases, the Supreme Court recognized that a person subject to potential commitment must be provided with due process, and that commitment could not occur unless the person had serious difficulty in controlling his or her dangerous behavior. (*In re Howard N., supra,* 35 Cal.4th at pp. 128–129.)

Turning to the issue in the case, the Supreme Court first concluded that while the above cases were all decided in the SVP context, "it is difficult to imagine on what basis the high court could articulate different due process standards for the civil commitment of dangerous mentally ill persons who happen to be sexually violent predators than for those dangerous mentally ill persons who are not sexually violent predators." (*In re Howard N., supra,* 35 Cal.4th at p. 131.) "Thus, while this is not a sexually violent predator case, there would seem little analytical basis under these circumstances to stray from the due process requirements the high court has established for the civil commitment of sexually violent predators. . . . We therefore conclude such a requirement is constitutionally mandated." (*Id.* at p. 132.)

 The Supreme Court then determined that section 1800 et seq. should be interpreted to contain a requirement of "serious difficulty in controlling dangerous behavior." (*In re Howard N., supra,* 35 Cal.4th at p. 132.) This conclusion is based on two rationales. First, the Supreme Court cited the statutory interpretation rule that "if 'feasible within bounds set by their words and purpose, statutes should be construed to preserve their constitutionality.' [Citations.]" (*Ibid.*)

Second, the Supreme Court placed great reliance on the intent of the Legislature. "While the statutory language does not expressly require a demonstration that the person has serious difficulty controlling his dangerous behavior, construing the existing language to include such a requirement does not appear inconsistent with legislative intent." (*In re Howard N., supra,* 35 Cal.4th at p. 132.) Next, the Supreme Court relied on the past actions of the Legislature to conclude that the Legislature is "committed to making the scheme constitutional." (*Id.* at p. 133.)

The Supreme Court concluded, "Thus, as we have done before, we can preserve the constitutionality of the extended detention scheme by simply interpreting the scheme to require not only that a person is 'physically dangerous to the public because of his or her mental . . . deficiency, disorder, or abnormality,' but also that the mental deficiency, disorder, or abnormality causes him [or her] to have serious difficulty controlling his [or her] dangerous behavior. This aspect of the person's condition must be alleged in the petition for extended commitment (§ 1800), and demonstrated at the probable cause hearing (§ 1801) and any ensuing trial (§ 1801.5)." (*In re Howard N., supra,* 35 Cal.4th at p. 135.)

### D. *Section 1800 et seq. and the risk of reoffense*

The Supreme Court did not address in *Howard N.* the question of section 1800 et seq.'s failure to require a finding that there is a serious or well-founded risk of reoffense because the person's mental deficiency, disorder, or abnormality causes a serious difficulty in controlling behavior.

As we have explained in part I.B., *ante*, the cases affirming the constitutionality of the SVP Act have required such a finding. As the Supreme Court stated in *Howard N.*, "[I]t is difficult to imagine on what basis the high court could articulate different due process standards for the civil commitment of dangerous mentally ill persons who happen to be sexually violent predators than for those dangerous mentally ill persons who are not sexually violent predators." (*In re Howard N., supra,* 35 Cal.4th at p. 131.)

The statute, as written, does not require this finding. The only question required by the statute to be submitted to the finder of fact is "Is the person physically dangerous to the public because of his or her mental or physical deficiency, disorder, or abnormality?" (§ 1801.5.)

 The holding in *Howard N.* compels us to construe the statute to require such a finding to uphold the constitutionality of the statutory scheme. As in *Howard N.*, this "aspect of the person's condition must be alleged in the petition for extended commitment [citation], and demonstrated at the probable cause hearing [citation] and any ensuing trial [citation]." (*In re Howard N., supra,* 35 Cal.4th at p. 135.) In this case the petition did not contain such an allegation and no such demonstration was made at a probable cause hearing, so we must reverse the commitment order and remand the matter to the juvenile court.

## II. *Equal Protection**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The commitment order is reversed and the matter is remanded to the juvenile court. If CYA decides to pursue continued commitment, it must file a petition alleging (1) Michael is physically dangerous to the public because of his mental deficiency, disorder, or abnormality; (2) the mental deficiency, disorder, or abnormality causes him to have serious difficulty controlling his dangerous behavior; and (3) this inability to control his behavior results in a serious and well-founded risk that Michael will reoffend.

---

*See footnote, *ante*, page 1074.

Each of these elements also must be demonstrated by the appropriate standard at the probable cause hearing and any ensuing trial.

Buckley, Acting P. J., and Gomes, J., concurred.